IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-00018-D

**Sherri Snipes Jones,**

    Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

    Defendant.

**Memorandum & Recommendation**

  Plaintiff Sherri Snipes Jones instituted this action on March 11, 2015, to challenge the denial of her application for social security income. Jones claims that Administrative Law Judge Roseanne P. Gudzan erred in her determination by failing to find that her medical condition met or equaled the criteria for Listing 1.07, in support of which Jones has submitted additional evidence. She also contends that ALJ Gudzan failed to properly evaluate a vocational opinion. Both Jones and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 23, 25.

  After reviewing the parties' arguments, the court has determined that ALJ Gudzan erred in her decision. Because ALJ Gudzan did not apply the appropriate criteria for evaluating Jones's impairments at step three, the undersigned cannot conclude that substantial evidence supports her decision. Further, the submission of subsequently-generated evidence potentially addresses Jones's condition during the relevant time period. Therefore the undersigned magistrate judge recommends[1] that Jones's Motion for Judgment on the Pleadings be granted, that Colvin's

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

Motion for Judgment on the Pleadings be denied, and that and that the matter be remanded for further consideration.

I.      **Background**

On April 3, 2012, Jones filed applications for disability benefits and supplemental security income on the basis of a disability that allegedly began on October 1, 2009. After her claims were denied at both the initial stage and upon reconsideration, Jones appeared before ALJ Gudzan for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Gudzan determined that Jones was not entitled to benefits because she was not disabled. Tr. at 40–48.

ALJ Gudzan found that Jones had the following severe impairments: status post left humerus fracture and degenerative disc disease of the lumbar spine. *Id.* at 42. ALJ Gudzan also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 43. ALJ Gudzan determined that Jones had the RFC to perform light work, with additional limitations. *Id.* at 44. The limitations included: Jones cannot push or pull with the left upper extremity; she cannot climb ladders, ropes, or scaffolds and she cannot crawl; she can do no reaching overhead with the left upper extremity and can occasionally reach out with the left upper extremity; she has no limitations in the use of the right upper extremity, which is her dominant extremity; she can frequently climb ramps and stairs and can frequently stoop, kneel, crouch, and balance; she must avoid concentrated exposure to hazards such as unprotected heights or exposed dangerous parts; and she needs a sit/stand option at the work station every 30 minutes to one hour. *Id.* ALJ Gudzan also concluded that Jones was unable to perform her past work as a cook, inventory clerk, or painter. *Id.* at 46. ALJ Gudzan found that, considering her age, education, work experience, and RFC, there were other jobs that existed in the national

economy that she was capable of performing. *Id.* at 47–48. These jobs included: office helper, conveyor line monitor, and information clerk. *Id.* at 47. Thus, ALJ Gudzan found that Jones was not disabled. *Id.* at 48

After unsuccessfully seeking review by the Appeals Council, Jones commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on March 11, 2015. D.E. 6.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to determinating whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The Commissioner's decision must be affirmed if it is supported by such evidence. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part

404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

Jones suffered a mid-shaft humeral fracture when she was thrown from a horse in 2008. The fracture failed to heal fully, resulting in a partial union with an extension deformity. Tr. at 284. Jones was unable to have her arm surgically repaired because she lacked health insurance. A June 4, 2012 x-ray confirmed an old, mid-humeral nonunion fracture deformity with moderate posterior and lateral angulation of the distal fracture fragment. *Id*. at 287.

Jones's medical history also demonstrates degenerative disc disease of the lumbar spine. Treatment notes reflect low back pain with tingling in both legs (*id*. at 349) and spasms in the paraspinal muscles (*id*. at 351). Providers prescribed medication for pain and recommended physical therapy, although Jones could not afford it. *Id.* at 310, 337, 351. An MRI of her lumbar spine in March 2013 showed lower lumbar facet atrophy with disc protrusion at L4-5 and a disc bulge at L2-3. *Id.* at 393.

As a result of her left arm impairment, Jones contends that she developed weakness and chronic pain in her arms, back, and legs. *Id.* at 330. She testified that she also has a right arm impairment as a result of compensating for the loss of function and pain associated with her left

arm. *Id.* at 59. She estimated that she could lift or carry about seven pounds with her right arm, stand or walk for 10 to 15 minutes, and sit for 15 minutes. *Id.* at 62, 64. Jones stated that she spends 80 percent of the day lying down to alleviate her pain. *Id.* at 63.

### D.     Listing 1.07

Jones first contends that ALJ Gudzan erred in failing to evaluate her impairments under Listing 1.07 (fracture of an upper extremity). The Commissioner argues that ALJ Gudzan did not err in failing to evaluate her impairments under this Listing because there is insufficient evidence in the record to establish that she meets or equals its criteria. The undersigned concludes that ALJ Gudzan evaluated Jones's impairments under Listing 1.07 but failed to apply the proper criteria associated with that Listing.

The Listing of Impairments details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, 20 C.F.R. § 416.925(c)(3), or are medically equivalent to a listing, *id.* § 416.926, the claimant is considered disabled. *Id.* § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (stating that the listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of demonstrating that his or her impairments meet or medically equal a listed impairment. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also*

5

*Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). As a result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530–31; *see also* 20 C.F.R. § 416.925(c)(3). A diagnosis of a particular condition, by itself, is insufficient to establish that a claimant satisfies a listing's criteria. *Id.* § 416.925(d); *see also Mecimore v. Astrue*, No. 5:10–CV–64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

Jones maintains that ALJ Gudzan failed to evaluate her impairments under Listing 1.07. ALJ Gudzan's decision references Listing 1.06, which addresses fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. Tr. at 43. However, ALJ Gudzan's discussion of the Listing indicates that although she referred to Listing 1.06, she evaluated Jones's upper extremity fracture under Listing 1.07. ALJ Gudzan stated "[E]ven though the evidence of record showed the nonunion of her left upper extremity fracture, the claimant has failed to demonstrate an inability to perform fine or gross movements effectively as defined in Listing 1.002Bc."[2] *Id.* Clearly, then, ALJ Gudzan was evaluating Jones's upper extremity impairments, not a lower extremity impairment envisioned in Listing 1.06. It therefore appears that ALJ Gudzan's reference to Listing 1.06 is a mere misstatement.

However, Jones also argues that ALJ Gudzan erred by addressing her inability to perform fine and gross movements effectively. She contends that this factor is not a requirement of Listing 1.07. Listing 1.07 provides:

---

[2] "Functional loss" is defined as an inability to ambulate effectively or an inability to perform fine and gross movements effectively. An"[i]nability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.002Bc.

6

Case 7:15-cv-00018-D   Document 29   Filed 06/08/16   Page 6 of 11

> Fracture of an upper extremity with nonunion of a fracture of the shaft of the humerus, radius, or ulna, under continuing surgical management, as defined in 1.00M, directed toward restoration of functional use of the extremity, and such function was not restored or expected to be restored within 12 months of onset.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.07. Further, being "under continuing surgical management" in Listing 1.07 is described as follows:

> [S]urgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part. It may include such factors as post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments that delay the individual's attainment of maximum benefit from therapy.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(M). ALJ Gudzan did not address this element of Listing 1.07 in the decision. It is not clear that Listing 1.07 also requires an inability to perform fine and gross movements effectively with both upper extremities, as referenced by ALJ Gudzan and articulated in § 1.002Bc of the Listings. "Surgical management" refers to efforts aimed at restoring "functional use of the affected part." *Id.* Listing 1.07 specifically refers to restoration of "functional use of the extremity," which has not occurred or is not expected. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.07.

The role of the court in this instance is not that of factfinder. *See Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) (noting that it is not the province of the reviewing court to engage in fact-finding exercises in the first instance."); *see also Brown v. Colvin*, No. 14-2106, 2016 WL 502918, at *2 (4th Cir. Feb. 9, 2016) (declining parties' "invitations to review the medical record de novo to discover facts to support or refute the ALJ's finding at Step Three, and it was error for the district court to do so."). Because ALJ Gudzan's decision fails to address the "continuing surgical management," it is unclear whether Jones's impairment meets or equals Listing 1.07. Accordingly, remand is appropriate on this issue.

### E. Additional evidence

Jones has submitted additional evidence which, she claims, warrants remand for further consideration. The evidence consists of a February 25, 2014 vocational evaluation and medical records, including a May 4, 2015 CT scan of her left arm; July 9, 2015 treatment notes from orthopedist Dr. Richard Moore, who recommended surgical repair of the left humerus; and her February 27, 2015 approval for Medicaid coverage. The Commissioner maintains that these records, generated after the ALJ's decision, do not relate to the relevant time period and therefore are immaterial. Accordingly, she argues that these additional documents do not form a basis for remand.

Remand is allowed "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Accordingly, a claimant has the burden of showing that evidence is "(1) new, (2) material, and (3) previously omitted for good cause." *Cox v. Astrue*, No. 5:11-cv-527-D, 2013 WL 363755, at *2–3 (determining that remand was not warranted where claimant had not submitted new evidence, there was no basis to conclude that the disability award determination was material, and claimant failed to show good cause by offering no explanation as to why the evidence was not submitted at the administrative level) (citing *Smith*, 99 F.3d at 638 n. 5). "[E]vidence is material if there is a reasonable possibility that it would have changed the outcome of the disability determination." *Id.* at *3 (citing *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). And "good cause requires a good explanation for the failure to submit the evidence earlier." *Id.*

Jones asserts that the Social Security Administration[3] has failed to properly consider the vocational evaluation conducted by Stephen Carpenter, a certified rehabilitation counselor. Tr. 11–31. After conducting several tests on Jones, Carpenter concluded that Jones had significant restrictions in the use of her right upper extremity that precluded work at any functional level. *Id.* at 30. He stated that the testing was objective and that the test validity was verified through the administration of "distraction tests" to rule out reduced effort or symptom magnification. *Id.* Jones argues that the SSA ignored this opinion.

The Commissioner maintains that the opinion, issued on February 24, 2014, falls outside of the applicable time period without any indication that it relates to the relevant time period. The Appeals Council considered this evidence but found that it did not affect the disability decision because it concerned a later period than that at issue before ALJ Gudzan. *Id.* at 2.

Carpenter's evaluation is unquestionably "new" and arguably "material." Although it was issued after the relevant time period, it was only four month later and could reasonably inform Jones's condition during the time period before ALJ Gudzan. Given that remand is appropriate because of error at step three, upon remand the ALJ should also evaluate Carpenter's evaluation report, including determining whether it offers information about Jones's impairments during the relevant time period and the weight it is due.

Jones also points out that the 2015 medical evidence referenced above resulted in a favorable decision on her subsequent application for benefits, effective October 24, 2013, one day after the decision at issue here. The May 4, 2015 CT scan noted "ununited fracture of the left mid humeral shaft with formation of a pseudoarticulation. Significant angulation is present." D.E. 24-2 at 2. Dr. Moore's July 9, 2015 treatment records note her diminished sensation,

---

[3] Jones argues that the Defendant has ignored this evidence, not that ALJ Gudzan failed to consider it, given that it was produced after the date of her decision.

positive Tinel's and Phalen's tests, and atrophy in the right upper extremity. *Id*. at 3. Dr. Moore recommended resection of her pseudoarthrosis and shortening of the humeral bone with bone graft. *Id.* He also concluded Jones suffered from carpal tunnel syndrome on the right. *Id.*

This evidence, too, is unquestionably "new" as it did not exist at the time of ALJ Gudzan's decision, and also qualifies as "material" given that it supported, at least in part, a finding of disability of Jones's subsequent application. Because remand is recommended to correct the error at step three, like the Carpenter evaluation, the ALJ should consider and weigh these subsequently-generated medical records to determine if they relate to the relevant time period.

### III. Conclusion

For the forgoing reasons, the court recommends that Jones's Motion for Judgment on the Pleadings (D.E. 21) be granted, that Colvin's Motion for Judgment on the Pleadings (D.E. 23) be denied, and that the Commissioner's decision be remanded for further consideration.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: June 8, 2016

                                        */s/ Robert T. Numbers II*
                                        ROBERT T. NUMBERS, II
                                        UNITED STATES MAGISTRATE JUDGE